## Artz v. Robertson et al.

. 50    27
173s    58

1. ATTORNEY'S SERVICES—*Whether Necessary.*—Under an action for the recovery ot legal services, the question being whether they were necessary services or not, the court refused to permit the defendant to show by a witness, who was an attorney at law, that the legal services claimed for, were not necessary. In the proceeding in which they were rendered, the question as to whether such services, or any part of them, were reasonably necessary in the proceeding, was denied by a plea. *It was held,* that the refusal of the court to permit the witness to testify was error, because the question as to whether such services were necessary became an issue on the trial, which the plaintiffs were bound to prove the same as other questions of fact, and it was a subject capable of being controverted by the defendant the same as other issues in the case.

2. NECESSARIES—*The Term Distinguished from Necessary.*—The question whether a certain thing is necessary or not, is, originally, a question for the jury to determine. The term necessaries has a more expressive meaning than the word necessary, and when used in connection with furnished articles, the former means such articles, services, or the like as the husband, considering his ability, ought to furnish his wife for sustenance and the preservation of her health and comfort. The word necessary only has reference to the necessity of their being furnished.

3. HUSBAND AND WIFE—*Necessaries to be Furnished.*—Where a wife is charged with murder, arrested and committed to jail upon the charge, she is entitled to such legal counsel, assistance and advice as are reasonably necessary for the protection of her life, liberty, comfort and health, and the husband is required by law, according to his ability, to furnish the same, or to pay for the same when furnished by another.

4. SERVICES—*Necessaries.*—An action for necessaries furnished, is different from a case where an employer is sued for the services done in his behalf. In such a case, whatever is done in pursuance of the employment, where the employer knows what is being done, he may be presumed to assent to it and be bound by it. In a case for necessaries furnished, where a person liable to pay for the same, forbids their being furnished, no such presumption arises.

5. HUSBAND AND WIFE—*Legal Services Furnished the Wife as Neces-*

saries—*Burden of Proof*.—In an action against the husband to recover for legal services and disbursements made in behalf of his wife, who was charged with a criminal offense, the burden of proof is upon the plaintiff to show that all the legal services rendered and the disbursements made, for which recovery is sought, were reasonably necessary to the wife's defense.

6.   ATTORNEY'S SERVICES—*Question as to Their Proper Performance.*—As to whether services performed in a law suit and money expended by an attorney for his client has been properly performed and expended according to good practice in the special profession and occupation of the lawyer, are expert questions, and a lawyer may be called on to testify to such question as an expert, and it is proper for an attorney skilled in his profession to testify as to whether such services as were rendered were reasonably required for the proper management of the case.

7.   TRIALS—*Statement of the Judge in Presence of the Jury.*—Where a question of fact is in issue before the jury, it is improper for the judge to say anything calculated to influence witnesses in giving their testimony, or to give the jury to understand what his opinion of the evidence is.

8.   INSTRUCTIONS—*As to Whether Legal Services are Necessary.*—In the trial of an action brought by attorneys to recover for their services, an instruction is erroneous which excludes from the jury the consideration of the issue as to whether the legal services, or any part thereof, claimed for them, were reasonably necessary for the defense of the person for whom such services were rendered.

9.   VERDICTS—*Not to be Impeached by Jurors.*—A juror can not be allowed to impeach his verdict by making an affidavit that he was induced to sign it because others of the jury told him he must do so.

**Memorandum.**—Assumpsit for legal services.   Judgment for plaintiff. Appeal from the Circuit Court of Mercer County; the Hon. JOHN G. GLENN, Judge, presiding.   Heard in this court at the May term, 1892. Opinion filed May 25, 1893.

The statement of facts is contained in the opinion of the court.

APPELLANT'S BRIEF, J. H. CONNELL AND L. D. THOMASON, ATTORNEYS.

The court should have admitted the evidence of Mr. Pepper on the question of the necessity of the employment of the attorneys by the wife.   We have no doubt the refusal of the court to admit this evidence led to the verdict against the defendant.   James v. Johnson, 12 Brad. 286; 1 Wharton on Evidence, 444; Transportation Co. v. Hope, 5 Otto (U. S.)

299; Schuler on Husband and Wife, Sec. 107 and 120; Sall-wasser v. Hazlitt & Co., 18 Brad. 243; Rogers on Expert Testimony, Sec. 1 and 6; The Weber Wagon Co. v. Kehl, 40 Ill. App. 584; Doud v. Guthrie et al., 13 Brad. 653; Price v. Hartshorn, 44 N. Y. 101; Illinois Cent. R. R. Co. v. Latimer, 128 Ill. 170; 1 Smith's Leading Cases, 541, 4th Am. Ed. 1852.

BASSETT & BASSETT, *pro se*, and attorneys for Robertson & Bull.

OPINION OF THE COURT, LACEY, J.

The appellees, Andrew J. Robertson and John Bull, attorneys at law and partners, resided in Elmira, Chemung county, New York, and Isaac N. and Thomas W. Bassett, the other appellees, are also a firm of lawyers residing in Aledo, Mercer county, Illinois. The appellant and his wife, Josephine Artz, reside in the same county with appellees, Bassett. This suit was brought by the appellees against the appellant to recover attorney's fees for legal services rendered for his wife in Mercer county, Illinois, and in Chemung county, New York, in defending her against a charge of murder of her former husband, David Ramsey, alleged to have been committed in Elmira, New York, while she and he lived together as husband and wife, having been married to him in Elmira, New York, the second time, in the early part of 1889. The death of Ramsey occurred a few months after their marriage. His body was embalmed and his interment taken charge of and accomplished by a typographical union of which he was a member. After a short time his wife returned to Aledo, and was soon after married to Isaac Artz, the appellant. A sister of David Ramsey, residing in Elmira, created suspicion against Mrs. Artz and charged her with having murdered her husband by arsenical poisoning. His body was exhumed and arsenic found in body and brain. A coroner's jury was summoned and on the 8th of August, 1889, returned a verdict finding that Ramsey came to his death on the 9th of May, 1889, at his

residence in Elmira, New York, from arsenical poisoning under circumstances that led them to suspect Josephine Artz, formerly the wife of the deceased husband, the fact of appellant's wife's early marriage after her husband's death being one of the circumstances of suspicion against her. About the time or just before the calling of the coroner's jury, to wit, on the 29th day of July, 1889, the appellant's wife was arrested and placed in jail by the sheriff of Mercer county, Illinois, on a telegram from the sheriff of Chemung county, New York, there to await the verdict of the coroner's jury and any requisition for arrest that might follow. On the 2d day of August of the same year, the firm of Robertson & Bull, residing in Elmira, wrote a letter to Bassett & Bassett in Aledo, concerning the case, the purpose of which was to obtain appellees, Bassett, to procure themselves and appellees, Robertson & Bull, to be retained in the case to defend Mrs. Artz as her counsel against the charge of murder. As is insisted on by appellees, and as the evidence tends to show, both these firms were retained jointly in the case by Mrs. Artz alone on the basis of appellant's credit, she having no means of her own, and appellant refusing to sanction the employment or to employ other counsel to defend his wife. The basis of the recovery sought in this case is on such employment, and the appellees' labor and services in Mercer county, Illinois, and Chemung county, New York, and their labor and services and expenses incurred in the case until she was discharged in Elmira, New York, where she had been taken by the sheriff of said Chemung county, and placed in jail, the grand jury of that county having failed to find any indictment against her. The declaration alleges that the services were necessary for the protection of the life and liberty, comfort and health of the said Josephine Artz, and that appellees charged and relied on appellant to pay for such services and disbursements. The charges of appellees for services consist of attendance by Robertson before the coroner's jury, coming to Illinois and consulting with Mrs. Artz, and looking up the case in Mercer county, assisted in the last named work by appellee

Bassett; returning with the prisoner to New York and appearing before the Recorder's Court there and cross-examining witnesses and introducing others to show that arsenic will be found in the brain after a lapse of time where a dead body is embalmed with a preparation of arsenic; and working on the subject and procuring scientific evidence in Mrs. Artz' favor on the same subject, by means of which it is insisted the grand jury refused to indict the prisoner, and also about $146 necessarily expended in and about the case.

The jury found a verdict for appellees to the amount of $700, on which the court below rendered judgment.

It is insisted by counsel for appellant, among other things, that the verdict is contrary to the weight of the evidence, and that the damages are excessive.

After an examination of the entire evidence we can not say that such is the case. It is true the evidence is conflicting; but giving the appellees the advantages which by law they acquire by a verdict, we can not say that the judgment ought to be reversed for that reason. Neither is the complaint that appellees failed to prove that they were experienced and competent attorneys, well taken.

In the absence of any proof that appellees failed to properly attend to the case, or that they mismanaged it, the proof that they were in actual practice was sufficient. The abstract fails to show that any exception was taken to the admitting in evidence the certified copy of the coroner's jury, or that any but a general objection was made to it; in which case only, its competency is questioned, and not the proper authentication; therefore it is not necessary to inquire as to the sufficiency of authentication.

Another more serious objection is made, and that is the refusal of the court to allow appellant to show by witness Pepper, an attorney at law, that the appellees' legal services as embodied in the hypothetical question put to their witnesses, Stanchfield and others, were not necessary, and also the ruling of the court in the same connection, that the question as to the necessity of the services was one of law,

and that their necessity had been established by a decision of this court in a former case, involving the same services in an opinion found in 38 Ill. App. 593. Also the giving by the court, in appellees' behalf, instructions two and three, ignoring the same question and instructing the jury in substance, that appellees might recover, without regard to the necessity of the services to the proper and reasonable defense of Josephine Artz. In reference to the question that this court settled any matter of fact in its former opinion, above cited, we can only say that we were aiming to settle a question of law, where the facts were admitted by a demurrer, to the declaration. It was averred in the declaration, in the case as passed on by us as matter of fact, that the legal services and disbursements, as furnished and made by the plaintiffs, " were reasonably necessary for the protection of the life, liberty, comfort, and health of Josephine Artz."

Such averment was admitted by the demurrer, and the only question for the court to decide was whether the services, under the circumstances, could be regarded within the meaning of the law as *necessaries*, for which recovery could be had by the one furnishing them against the husband of the wife so assisted. While we found no express precedent on the subject, we were satisfied such legal services necessarily fell within the reason of, and therefore the rule itself.

With that decision, and the reasoning therein, we are perfectly satisfied. It is out of the power of this court to settle a question of fact where an issue of fact has not been tried in the court below. And in this case, the question as to whether the legal services or any part of them was reasonably necessary to the defense of Mrs. Artz, was denied by plea. Of course, then, this became an issue on the trial, which the appellees must prove as well as any other question of fact, and it was a subject capable of being controverted by appellant the same as any other issue in the case. It is laid down by the text writers that "the question whether a certain thing is necessary or not, is ordinarily a question

Artz v. Robertson.

for a jury to determine." Rodgers on Expert Testimony, Sec. 5. The term "necessaries" has a more comprehensive meaning than the word "necessary" when used in connection with furnishing the articles. The former means such articles, services or the like as the husband, considering his ability, ought to furnish his wife for sustenance and the preservation of her health, life and comfort. The latter word only has reference to the necessity of their being furnished. In the opinion as reported when here before, as cited, 38 Ill. App. 605, by some mistake of the writer or misprint of the editor in stating the question, we were reported as saying, "the only question before us is, whether the declaration stated a legal and valid cause of action against defendant. If the legal services and advances made to the wife, under the circumstances stated in the declaration, were necessary within the meaning of the law, then the declaration is good," etc.

The word "necessaries" instead of "necessary" should have been used. Then there could have been no misapprehension as to whether we were settling a question of fact or law upon an admitted state of facts, *i. e.*, whether legal services under the circumstances might be embraced within the term "necessaries." But, as no question of fact was before us, it is plain enough we could have decided none.

Some of the services and disbursements claimed to have been rendered and furnished, may have been necessary to the wife's defense, and some unnecessary. It may not have been necessary even to furnish any of the services or disbursements. But, as to the wife being entitled to some legal counsel, assistance and advice, we think, under the evidence, there can not be much doubt; and if this were the only question, we should regard the proof so clear that we would not feel justified, under the circumstances, in reversing the judgment, notwithstanding any supposed errors in the rulings of the court as to the admissibility of evidence or giving instructions for appellees. But there are portions of the alleged services and disbursements reasonably open to question as to their necessity, such as time spent by Robert-

son in coming from New York to Illinois, and the money he
spent on the trip ($70), and some of the other services might
be questioned as unnecessary, not proper for us to specify
or elaborate. This case is quite different from a case where
the employer himself is sued for services done in his behalf.
In such case, whatever is done in pursuance of the employ-
ment where the employer knows of what is being done, he
may be presumed to assent to it and be bound by it. In
this case, however, where appellant refused and forbid ap-
pellees' employment, no such presumption could arise. In
order to recover, appellees must show that all the legal ser-
vice rendered, and that the disbursements made, for which
recovery is sought, were reasonably necessary to the wife's
defense. There was no attempt of this kind, and only proof
of what was done was introduced, except, only, Stanchfield
testified on cross-examination, that all things assumed in the
hypothetical question propounded to him, which did not
include the disbursements of money, were necessary, but
Pepper's testimony, to contradict, was ruled out by the
court.

As to whether work and services performed in a law suit
and money expended by an attorney for his client, has been
properly performed and expended according to good prac-
tice in the special profession and occupation of a lawyer, are
certainly expert questions, and a lawyer may be called on
to testify to such matters as an expert. It is as much a
question as it would be in case of a physician as to the proper
treatment of disease or wounds and injuries. It would be
proper for an attorney, skilled in his profession, to testify as
to whether such efforts as were made in Mrs. Artz' case,
were reasonably required for her proper defense. If they
were, then within the meaning of the law, they would be
necessary. The judge below committed an error in stating
in presence of the jury that he would be very much sur-
prised if Mr. Pepper would swear that they (the legal serv-
ices alleged to have been performed by appellees and em-
braced in the hypothetical questions) were not necessary.

This was a question of fact in issue before the jury, and

Artz v. Robertson.

the court should say nothing calculated to influence the witness in giving his testimony before the jury, or give the jury to understand that all the alleged services were necessary in the court's opinion. The court should not thus invade the province of the jury. The second and third instructions given by the court for appellees were also erroneous, in excluding from the jury the consideration of the issue as to whether the legal services, or any part thereof, claimed for them, were reasonably necessary for the defense of appellant's wife against the charge of murder. We see no other error prejudicial to appellant in the rulings of the court, either as to admission or exclusion of evidence, or as to giving or refusing instructions. The long hypothetical question included matter and considerations not proven at the time it was propounded nor afterward; such as accompanying the prisoner from Aledo, Illinois, to Elmira, New York, as a protection against possible admissions and against attempts to interview her, and get statements from the accused, etc.; also in stating other objects in attending the coroner's jury and the introducing certain witnesses before the Recorder's Court to influence the prosecution, etc., and other considerations, and also stating the objects of the investigations as to the effects of embalmment with a preparation of arsenic, etc., and by these means an indictment was prevented, etc. Besides, there being no proof of these objects, it appears to be an argument presented to the witness designed to show the great skill and foresight with which the case had been handled by one of the appellee's attorneys. It appears to be improper for the reason, the only question was as to the value of certain legal services rendered by appellees to Mrs. Artz. As the answers of the witnesses disclose that they did not give the suggestions any great weight, we might not be disposed to reverse the judgment for such reason alone.

We see no force in the point made, that certain jurors were induced to sign the verdict because others of the jury told them they must do so, that is, that it was the law. The ignorance displayed by those jurors, if their affidavits be

true, is most wonderful, but they can not be allowed to impeach their own verdict by such a display of stupidity as this.

For the above errors, the judgment is reversed and the cause remanded.