ROBERT H. ELDER, Respondent, v. PHILIP ROSENWASSER, Appellant.

Supreme Court, Appellate Term, Second Department. June, 1923.

**Husband and wife — separation — order granting wife counsel fee and denying alimony — when third party cannot recover from husband for services rendered his wife pending the separation action.**

While it is the husband's duty to furnish his wife with necessaries, and where he wrongfully fails to do it the third party furnishing them may recover, yet where the parties have submitted their differences to the court, and under the statute the court has made, or has refused to make, a provision for maintenance, the adjudication determines the liability of the husband.

Appellant's wife, in an action for separation, made application for counsel fee and alimony. The court granted her counsel fees but denied her alimony. During the pendency of the action the husband provided a credit account for food for his wife and she was living in the house without rent charge. She was arrested for robbery and assault and sued for libel while her action for separation from her husband was still pending, but after the order of the court was made granting her counsel fees.

Respondent appeared on behalf of appellant's wife in the criminal proceedings and in the libel suit. The criminal proceedings were adjusted without trial and the complaint in the libel suit was dismissed. Respondent obtained judgment against appellant for the services rendered his wife. *Held*, that the order made in the separation action was the measure of the husband's liability to his wife, and the judgment will be reversed and judgment directed in favor of appellant dismissing the complaint.

APPEAL by defendant from two judgments of the Municipal Court of the city of New York, borough of Brooklyn, first district, after trial without a jury.

*Prince & Loeb (Sidney J. Loeb,* of counsel), for appellant.

*Otto S. Bowling,* for respondent.

LAZANSKY, J. Appeals from judgments, one for $250 and costs, and the other for $500 and costs.

Defendant's wife brought a suit against him for a separation. Upon what grounds does not appear. At the time of the com-

mencement of the action and during its pendency the husband and wife were living separate and apart although in the same house. During that same period the husband provided a credit for the purchase of foodstuffs by his wife and she was living in the house without rent charge. In the separation suit the wife made an application for counsel fee and alimony and the court granted the motion to the extent of a counsel fee, but denied it as to alimony. After this order was made and while the action was still pending, the wife was arrested for robbery and assault and an action was commenced against her for libel. In the criminal proceedings the plaintiff appeared in behalf of the wife and after several adjournments in the Magistrate's Court the matter was adjusted between the complainant and the wife and thus disposed of without actual trial. In the libel suit plaintiff appeared in behalf of the wife and rendered services in that connection. The complaint was dismissed for failure to prosecute. It is for the services rendered in the criminal proceeding and in the libel suit that these actions were brought and judgments rendered for plaintiff. It does not appear whether the wife was justified in being separated from her husband. There is no proof in the case that it was through his fault that she was required to live apart from him and to begin the separation suit. If she was living apart from him through her fault, he would not be liable for necessaries furnished to her by a third party. It was, therefore, incumbent upon the plaintiff to prove that the wife was separated from her husband through no fault of hers. It may be that the order awarding her counsel fee may be considered *prima facie* proof that she was warranted in beginning the separation suit and in living apart from her husband; because it is, in effect, a finding that there was a reasonable likelihood of a recovery on her part. Such a finding would be admissible in evidence in such an action as this. But, assuming the wife was living apart from her husband because of his fault and that the criminal prosecution and the libel suit were unwarranted, the more important question is whether or not the services rendered by plaintiff for the wife were necessaries within the meaning of that term. No case has been submitted nor has any been found in this state bearing directly upon this question. The respondent cites three cases which he states hold that services rendered in defending a wife accused of crime are necessaries. *Conant* v. *Burnham*, 133 Mass. 503; *Warner* v. *Heiden*, 28 Wis. 517; *Artz* v. *Robertson*, 50 Ill. App. 27. The respondent also urges that if in the libel suit judgment had been obtained against the wife, she could have been arrested under a body execution, and cites for the proposition that any legal services

ELDER *v.* ROSENWASSER. **183**

Misc. 181]     Appellate Term. Second Department, June, 1923.

rendered in civil matters, when the circumstances require them, are necessaries, the following cases: *Munson* v. *Washband*, 31 Conn. 303; *Porter* v. *Briggs*, 38 Iowa, 166, and *Morris* v. *Palmer*, 39 N. H. 123. In *Conant* v. *Burnham*, 133 Mass. 503, it was held that a husband was liable for legal services rendered to his wife in successfully defending her against a complaint instituted against her *by him* for being a common drunkard. The court, in considering what necessaries were, say (at p. 505): " Each case must be determined by its own circumstances. Approximations may sometimes be made, by holding that certain articles or services are to be deemed outside of any reasonable construction of the term. But legal services do not fall within such universal or general exclusion. There may be occasions when such services are absolutely essential for the relief of a wife's physical or mental distress. Suing out a writ of *habeas corpus* to deliver herself from unjust and illegal imprisonment, or to regain possession of her child, might, under peculiar circumstances, furnish illustrations of a strong necessity. Another illustration may be found in the circumstances of the present case." It appears that the husband had committed an assault and battery upon his wife, and had instituted against her a criminal prosecution, which was without foundation, and the court say: " What was she to do? Is it to be held that the woman, ignorant of legal rules and methods of proceeding, without money or friends, not only deprived of the protection and aid of her husband, but encountering his active hostility, was competent to defend herself properly on her trial before a jury? " The court held that no artificial rule of law should be interposed to prevent her from obtaining assistance, in the same manner as the law allows her to obtain whatever else may be absolutely necessary, under such circumstances as may exist at the time. Then the court say further: " There is no hardship upon the husband, in this case, from the application of this rule; for by his own act he created the necessity which she was under, and he made no provision for supplying it." It will thus be observed that an important item which led the court to its conclusion was that the husband placed the wife in a position of dire necessity. It was also held in the case that the wife was not entitled to recover for legal assistance in prosecuting her husband for an assault and battery made upon her, because she could have made a complaint to the magistrate who would have issued a warrant, and that the attorney's services were not necessary. On this latter proposition a similar holding will be found in *McQuhae* v. *Rey*, 2 Misc. Rep. 476, but it really has no bearing on the question under consideration.

In *Warner* v. *Heiden*, 28 Wis. 517, a husband who had prosecuted

his wife to compel her to find sureties to keep the peace and who failed to sustain the charges brought against her, was held liable for the reasonable fees of attorneys employed by her to defend her against such prosecution, on the ground that such legal services were necessaries. Here again it will be observed that it was the act of the husband which made it necessary for the wife to engage legal services. The court refers to the definition of what necessaries are in 1 Bishop on Marriage and Divorce, § 554: " And, in general, we may say, that necessaries are such articles of food, or apparel, or medicine, or such medical attendance or nursing or such provided means of locomotion, or provided habitation and furniture, *or such provision for her protection in society*, and the like, as the husband, considering his ability and standing, ought to furnish to his wife for her sustenance, and the preservation of her health and comfort." In holding the defendant liable the court state: " The defendant had caused his wife to be arrested, and was endeavoring to compel her to find sureties to keep the peace, or, in default thereof, to send her to prison. He had made a charge against her which he was unable to substantiate. He had withdrawn from her that protection which it was his duty to give her, and had, without cause, put her in custody, and was endeavoring to use the machinery of the law to inflict upon her still greater evils. * * * It is idle to say, that, under .the circumstances of this case, legal advice and assistance was not necessary for her protection and safety." The court referring to the case of *Shepherd* v. *Mackoul*, 3 Campb. 326, which will be considered hereafter, say that since the defendant was present when the services in question were rendered, and made no objection thereto, a promise by the defendant to pay for such services may be fairly inferred. The court, however, did not rest its decision upon that basis.

In *Artz* v. *Robertson*, 50 Ill. App. 27, a recovery was permitted for legal services rendered to a wife who had been apprehended on a charge of murder. The husband had refused to sanction the employment of the plaintiffs and had refused to engage other counsel. The same case was before the same court in *Robertson* v. *Artz*, 38 Ill. App. 593, at which time the question was raised on a demurrer to the declaration. In the earlier report the court clearly held that the husband was liable for such legal services where it was alleged and the presumption existed that she was innocent of the great crime with which she stood charged. The case proceeded upon the theory that it was the duty of the husband to stand by the wife who was in such serious trouble on account of a criminal charge of which she was not guilty.

*Munson* v. *Washband,* 31 Conn. 303, is an extreme case. It seems to me it cannot be supported upon reason, for the court there held defendant liable for legal services rendered to a woman, who at the time the services were rendered was not his wife, and only became such after a suit was brought against defendant for a breach of promise of marriage.

*Porter* v. *Briggs,* 38 Iowa, 166, was an action brought for professional services rendered by the plaintiffs in defending a wife in an action brought by her husband for a divorce on the ground of adultery. In light of the decision in *Naumer* v. *Gray,* 28 App. Div. 529, which will be considered later, it will not be necessary to consider this case further than to refer to this dictum of the court (at p. 168): " It can hardly be doubted that if a wife is charged in a legal proceeding by a stranger, with the crime of adultery, the husband would be liable for all necessary expenses incurred in establishing her innocence. His liability would rest in such a case on the ground that the expenditure was demanded for *her* comfort and happiness. The law looks to and regards *her* rights in securing her protection, and it is not given because of anything the husband may suffer when they are invaded." Of course, under such circumstances the marital relationship would be seriously involved and it might be said to be the duty of the husband to do all in his power to maintain the good name of his wife and thus the integrity of the marital relationship.

In *Morris* v. *Palmer,* 39 N. H. 123, it was held that whenever it is necessary, for the safety of a wife, to enter a complaint against her husband for a breach of the peace, the legal costs of the proceeding may be recovered of him by action, upon the ground that the services rendered were necessaries furnished to the wife for her protection. It will be noted, of course, that it was the husband's own act which made the legal services necessary.

Save, therefore, in the case of *Robertson* v. *Artz,* 38 Ill. App. 593, where it was expressly decided, and in the dictum in *Porter* v. *Briggs,* 38 Iowa, 166, no case has been submitted which holds that the husband is liable for legal services rendered to a wife in a criminal prosecution against her or in civil proceedings where the services were not made necessary because of the acts of the husband.

In *Shepherd* v. *Mackoul,* 3 Campb. 326, the husband had without just cause turned his wife out of doors with great violence and she exhibited articles of the peace against him, prepared by the plaintiff, an attorney. It was held that if there was necessity for exhibiting articles of peace against the husband, " she carried along with her a credit for whatever her preservation and safety required." It also appeared that services had been rendered to her upon a charge

against her for maintaining a bawdy house, and the husband knew and approved of the business his wife carried on and was aware of the prosecution, without expressing any dissent to the attorney defending her. From this it was said a promise might be fairly inferred on the part of the defendant to pay the plaintiff for his labor in conducting the defense. The court does not say, however, that the defendant would be liable on the ground that the defense was within the term "necessaries." The suggestion is clear that if the husband did not know anything about his wife's business and was not cognizant of the prosecution then he would not be liable as for a necessary furnished to her. In the case at bar it appears that the husband knew of the criminal proceeding but that was because he was subpœnaed as a witness by the wife. No promise could be implied from his presence under such circumstances.

In *Moran* v. *Montz,* 175 Mo. App. 360, a husband, who was in prison at the time, was held liable for legal services rendered in procuring the commitment of his wife to an insane asylum. Such commitment was a necessary for her safekeeping. The court stated that "Notwithstanding the statutes placing married women on an equality with single women as to their separate property and property rights, the common law duty of a husband to provide his wife with what are termed necessaries remains unimpaired, * * * that legal services which are indispensable to securing the admittance of an insane woman to an asylum for the insane and for the performance of which there is an immediate and most exigent necessity should also be classed as necessaries."

In *Mulligan* v. *Mulligan,* 161 Ky. 628, legal services were rendered to a wife in connection with the protection of her dower right under a trust estate created by her husband, and the court say with reference to those legal services: "While it was proper, if she so desired that Mrs. Mulligan should be represented by counsel in this cause, we are of the opinion that such representation cannot be classed as one of those necessaries for the wife for which the statute renders the husband liable." The Kentucky statutes provide for the liability of the husband for his wife's necessaries.

In *Peaks* v. *Mayhew,* 94 Maine, 571, a wife willfully deserted her husband without his fault; while separated she was indicted and tried on a criminal charge, as to which a jury disagreed. It was held that she had no authority to pledge her husband's credit for the legal services of counsel who knew of the separation. The case was decided upon the theory that a wife who willfully leaves her husband has no right to pledge his credit for even necessaries. After reviewing some of the authorities touching upon the liability of the husband for legal services, the court (at p. 577)

say this, by way of dictum: " It is manifest, however, from all of the foregoing, that with respect to the liability of the husband, no valid reason can be given for distinguishing legal services from medical attendance, or from any other services, or articles which cannot be excluded as a matter of law from the class of necessaries."

In *Wilson* v. *Ford*, L. R., 3 Exch. 63, it was held that legal expenses incurred by a deserted wife incidental to a suit for restitution of conjugal rights, in obtaining counsel's opinion on the effect of an ante-nuptial agreement for a settlement, in obtaining professional advice as to the proper mode of dealing with tradespeople who were pressing her to pay them for various necessary articles supplied to her after she had been deserted, and of preventing distress threatened on furniture belonging to her husband in the house she occupied, are necessaries for which she has implied authority to pledge his credit. As to the first item, of course, it is similar to legal services rendered in an action brought by the wife against the husband for desertion, in accord with which is *Naumer* v. *Gray*, 28 App. Div. 529. As to counsel's opinion on the effect of an ante-nuptial agreement for a settlement, the court held that this obligation was incurred in order that she might ascertain whether or not she was entitled, under the settlement, to any money which she could apply to her own maintenance after desertion. It was held that it was a necessary expense. It was also held as to the third item that it was a proper course for the wife to take to consult her attorneys before allowing the tradesmen to sue her personally for necessaries bought after she had been deserted. The court said that she might have been liable herself in equity for some of the articles supplied had she possessed a separate estate and this expense was reasonably incident to her condition and circumstances. As to the threatened distress on her husband's furniture, the court held what she did was really a duty she owed to her husband to protect his goods. Here it clearly appears in each instance that the expenses incurred by the wife were incident to her husband's desertion of her.

*Naumer* v. *Gray, supra,* came before the court upon an appeal from a judgment entered upon a dismissal of the complaint. The action was brought to recover the value of legal services rendered to the wife of the defendant, in the institution and prosecution of an action by her against him for a separation upon the ground of cruel and inhuman treatment. It was held that an action could not be maintained. The court, by Cullen, J., reviewed the authorities in connection with legal services rendered to a wife in matrimonial actions, and at the outset of the opinion it was said (at p. 530):

" I think that a careful examination of the decided cases in this country will show that, while an action like the present cannot be maintained where the services were rendered in an action for divorce, it will lie where the action was for separation only." Reference is made to *Shelton* v. *Pendleton*, 18 Conn. 417, which was an action for services rendered to the wife in a suit for absolute divorce, and it was held that the husband was not liable. The decision was placed upon the ground that " ' The duty of providing necessaries for the wife is strictly marital, and is imposed by the common law in reference only to a state of coverture and not of divorce. * * * The husband could never have been placed under obligation to provide for the expenses of its dissolution. * * * Necessaries are to be provided, by a husband, for his wife, to sustain her as his wife, and not to provide for her future condition as a single woman, or perhaps as the wife of another man. * * * Indeed, it cannot be said truly that divorces, to the extent allowed by our law, are matters of necessity, but rather of privilege and favor.' " Surely this could not be applicable where the wife successfully defended an action for divorce. Then the court, in the *Naumer* case, say (at p. 534): " I think from this collation of the decided cases it may fairly be said that the weight of American authority is in favor of the maintenance of an action like the present. To succeed in it the plaintiff must show affirmatively that the suit was for the protection and support of the wife, and that the conduct of the husband was such as to render its institution and prosecution reasonable and proper." The only application that *Naumer* v. *Gray*, *supra*, can possibly have to the question under consideration is that in order to recover for legal services in separation actions it must appear it was through the fault of the husband that the services became necessary. In the case at bar the husband had nothing at all to do with the criminal prosecution and the civil action.

I think the statement made in *Robertson* v. *Artz*, 38 Ill. App. 593, 610, where the services were rendered to the wife charged with murder, may be applied here: " It is the duty of the husband to support and maintain his wife and children, to provide them a home, to feed and clothe them, to care for them when sick, to protect them living and to defend them in their persons and character, and in general to do and furnish for them in all respects what is reasonable and appropriate for them to have and enjoy, according to his station in life and his ability to furnish such things. The law never has nor never can sit down in order and give a name to a limited schedule of things which shall be necessary for a wife or child. The list must be left open and enlarged or limited

as occasion shall require." And the following (stated at p. 600) is also appropriate, although to a lesser degree: " What last extremity of necessity to this wife could have been greater or more urgent, short of torture itself, than there was upon her, seized by the officers of the law by her own fireside, at her own house, under her husband's roof, where it was her duty and her right to be, and carried to a foreign State under a charge of murder and thrust in prison, without friends or money, and alone and charged for her life. Then, if ever, was it her right to feel the strong, supporting arms of her husband about her, and then it was his highest duty and honor to keep his vows to protect his wife, and defend her with his presence, his counsel and his money. The declaration avers that he was abundantly able to defend her and employ counsel for her, but would not. It is admitted that medical services may be necessary for the wife to restore her to health or save her life, and why are the services of an attorney not equally necessary to save the wife from the dungeon or the scaffold? ".

While a married woman to-day stands before the law almost on an equal footing with a married man, yet he still is her protector and provider. It is true that she controls her own real and personal property (Dom. Rel. Law, § 50), as to all rights in respect thereof, and the power to make contracts with respect thereto, even with her husband (Id. § 51); and her contracts do not bind her husband (Id. § 55); she has a right of action for an injury to her person or property, and is liable for her wrongful or tortious acts, and the husband is not liable therefor unless they were done by his actual coercion or instigation (Id. § 57); she has a right to all wages, salary and profits for which she may render work, labor or services, unless otherwise agreed (Id. § 60); a married woman is a joint guardian of her children with her husband, with equal powers, rights and duties in regard to them (Id. § 81), nevertheless, respo si bility continues to rest upon the husband to provide and care for her, in accordance with their station in life. The spirit of progress stated by Crane, J., in *Oppenheim* v. *Kridel,* 236 N. Y. 156, " The common law is not rigid and inflexible, a thing dead to all surrounding and changing conditions, it does expand with reason. The common law is not a compendium of mechanical rules written in fixed and indelible characters, but a living organism which grows and moves in response to the larger and fuller development of the nation," has not yet released the husband from providing his wife with necessaries, as he always has provided. It seems to me where a wife, without any fault or wrong on her part, and being innocent of the charge, is prosecuted criminally or sued civilly whereby her liberty

might be involved, it is the duty of the husband to provide legal services to protect her, and upon his failure to do so she may pledge his credit. If she be separated from him without her fault, she may do likewise under the same circumstances. But, even if the services were necessaries, there is an insurmountable obstacle to plaintiff's recovery. As stated before, the wife and husband were separated; an application had been made for counsel fee and alimony which resulted in an order granting the former and denying the latter.

*Turner* v. *Woolworth*, 221 N. Y. 425, was an action brought for services of an attorney in excess of the amount that was allowed by the court for counsel fees in a matrimonial action. There was a finding in the case that the true value of the services was greatly in excess of the award, and this is said by the court: " On motion of the wife in the divorce suit and again in the suit for separation, the court fixed the fees which the husband was to pay. She chose her tribunal and her remedy. The award then made became, with the costs of the action, the measure of her rights and of her husband's obligation. There was ample power to increase the award, if thereafter it appeared to be inadequate. That power, indeed, was exercised, and there were new orders from time to time. But until increased, the award was final. Counsel were no longer at liberty, disregarding the limit of the orders, to hold the husband to his common-law liability for necessaries furnished. We do not say that such relief would be denied if the wife had made no motion and obtained no order (*Naumer* v. *Gray*, 28 App. Div. 529, 534; *Horn* v. *Schmalholz*, 150 App. Div. 333). That question is not before us. She invoked a summary remedy, and must abide by the result. The power to award counsel fees is regulated by the same section of the Code which authorizes the award of alimony (Code Civ. Pro. § 1769). The rule is that alimony, when allotted, measures the husband's duty of support (*Crittenden* v. *Schermerhorn*, 39 Mich. 661, and cases there cited; *Hare* v. *Gibson*, 32 Ohio St. 33; *People ex rel. Comrs. of Charities* v. *Cullen*, 153 N. Y. 629, 637). The liability for counsel fees can be no broader (*Naumer* v. *Gray*, *supra*). Any other conclusion might lead in practice to gross abuses. There would be little end to litigation if such orders settled nothing." It seems to me that this would be decisive of plaintiff's claim were it not for an inference that might be drawn from part of the court's language where it is stated: " The rule is that alimony, *when allotted*, measures the husband's duty of support." The thought behind that might be that there must be an allotment of alimony. Here there was no such award.

In *People ex rel. Comrs. of Charities* v. *Cullen*, 153 N. Y. 629,

the defendant was prosecuted for abandonment and he claimed that he was not compelled to support his wife. In a separation suit there was no award for maintenance. It was held that the common-law obligation of a husband to support his wife is so modified by a judicial separation from bed and board that it cannot be enforced by a proceeding for abandonment while such separation is in force, even if the decree of separation makes no provision for support. The court say, with reference to the fact that no allowance had been made for maintenance: " The fact that the court in the decree of separation made no allowance for the wife does not change the situation. The court did exercise its powers and discretion on the subject, and held that the pecuniary circumstances of the defendant would not warrant an allowance then, but left it open to the complainant to apply for alimony whenever the pecuniary circumstances of the defendant changed. This remedy has always been open to the wife and is open to her still. If the defendant has any pecuniary ability to contribute to his wife's support the divorce court has the power to modify the decree. If he has not, then there is really no ground for this proceeding."

In Bishop on Marriage, Divorce and Separation (Vol. II, § 838) it is said: " As a provision for the wife, alimony judicially decreed is within this principle; if regularly paid, it protects the husband against her debts, and the further effect of the decree is to render it conclusively sufficient in amount. And this doctrine extends even to the mere order of the court for temporary alimony during the pendency of a divorce suit,— it matters not to the husband's protection whether in fact the amount was adequate to the wife's needs or not. If it is not paid, the order will furnish him no protection."

In Schouler on Marriage, Divorce, Separation and Domestic Relations (6th ed. vol. 1, p. 131) the author sets forth the rule as follows: " Where the divorce court takes jurisdiction for the purpose of legalizing a separation of spouses, judicial action upon the wife's support changes the state of the case. Alimony now becomes the regular standard of allowance for necessaries; and hence the payment of alimony, even if actually insufficient for the wife's maintenance, will discharge the husband from further liability for her support. The same is true where the wife has been denied alimony. If the alimony be insufficient, the wife should induce the court to increase it. But the husband is liable for necessaries supplied to the wife before alimony is decreed, even although, as it is held, the decree afterwards direct the alimony to commence from a day preceding the supply of the necessaries.

One who sells to a wife living apart is chargeable with knowledge of the allotment of alimony, and this applies to alimony *pendente lite*."

In *Simpson* v. *Dutcher*, 123 N. Y. Supp. 340, in an opinion by Bischoff, J., it is stated: " The answer sets up as an affirmative defense that prior to the time when the necessaries were furnished an action had been commenced by defendant against his wife for an absolute divorce, that her motion for alimony had been denied, and that the action is still pending. The reply only denies knowledge or information sufficient to form a belief about it. A wife, who has been denied alimony by this court, cannot collect it in a roundabout way, by borrowing from a friend and having him sue the husband." See *Damman* v. *Bancroft*, 43 Misc. Rep. 678.

From these authorities the conclusion necessarily follows that this plaintiff was not entitled to recover. The reason, too, for the conclusion is undoubtedly correct. While it is the husband's duty to furnish his wife with necessaries, and where he wrongfully fails to do it the third party furnishing them may recover, yet where the parties have submitted their differences to the court, and under the statute the court has made, or has refused to make, a provision for maintenance, the adjudication determines the liability of the husband, whatever it may be. Here the court said that it was not the duty of the husband to take care of his wife. The reasons for it do not appear. The testimony that she had the use of the house and the husband had made arrangements to supply her with foodstuffs may have decided the court in that connection. But whatever the reason was, the order was the measure of the husband's liability. If it should be claimed that one in good faith, without notice of such an order, might be justified, when the wife is in need, in furnishing her with necessaries, no such claim could be made here because the plaintiff knew the entire situation.

Judgments unanimously reversed on the law, with fifteen dollars costs in each case, and judgments directed for defendant dismissing the complaints, with appropriate costs in the court below.

CROPSEY and FABER, JJ., concur.

Judgments reversed.